# SAM FOX PUBLISHING CO., INC., ET AL.
## *v.* UNITED STATES ET AL.

No. 56.   Argued March 29–30, 1961.—Decided May 29, 1961.

*Charles A. Horsky* argued the cause for appellants. With him on the brief was *Alvin Friedman*.

*Daniel M. Friedman* argued the cause for the United States. With him on the briefs were former *Solicitor General Rankin, Solicitor General Cox, Acting Assistant Attorney General Bicks, Acting Assistant Attorney General Kirkpatrick, Charles H. Weston, Richard A. Solomon* and *Irwin A. Seibel*.

*John F. Dooling, Jr.* argued the cause for the American Society of Composers, Authors and Publishers, appellee. On the brief were *Arthur H. Dean, Howard T. Milman, Herman Finkelstein, Lloyd N. Cutler, David H. Horowitz* and *Samuel A. Stern*.

MR. JUSTICE HARLAN delivered the opinion of the Court.

The appellants, proceeding under the Expediting Act, 15 U. S. C. § 29, appeal directly to this Court from an order of the District Court for the Southern District of New York denying their motions to intervene as of right in a proceeding to modify a consent decree previously entered in a government antitrust suit. The appellants were not named as parties either in the suit or modifica-

tion proceeding.[1]  The motions were made pursuant to Rule 24, subdivision (a)(2) of the Federal Rules of Civil Procedure.[2]

The matter arises in the following setting: In 1941 the United States brought suit under § 1 of the Sherman Act, 15 U. S. C. § 1, against the American Society of Composers, Authors and Publishers (ASCAP), an unincorporated association of which appellants are members, and certain of its officers.  The Society and the defendant officers besides being named as an entity and individuals, respectively, were also sued as representatives of all members of the Society.  The Society, comprising some 6,400 writers and publishers of musical compositions, was organized to take nonexclusive licenses to the works of its members, to license such works out for public performance, and to distribute among the members the revenues resulting therefrom.  The three appellants are among the Society's publisher members.

The Government's complaint in the action was aimed at two distinct types of antitrust violation: (1) alleged restraint of trade arising out of ASCAP's mode of dealing with outsiders desiring licenses of compositions in the Society's catalogue; and (2) alleged restraint of competition among the Society's members *inter sese,* result-

---

[1] Besides Sam Fox Publishing Company there are two other appellants, Pleasant Music Publishing Company and Jefferson Music Company, who, like Sam Fox, are music publishers.  Although Movietone Music Corporation also appealed, it did not appear in this Court.

[2] "(a) INTERVENTION OF RIGHT.  Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action . . . ."

The appellants also moved below for permissive, or discretionary, intervention under subdivision (b) of Rule 24, but no appeal has been taken from that part of the District Court's order.

ing from the asserted domination of the Society's affairs by a few of its large publisher members who, it was claimed, were able to control the complexion of the Board of Directors and the apportionment of the Society's revenues. As to the latter type of restraint, the prayer for relief sought to insure (a) that Board elections be by no method "other than by a membership vote in which all . . . members shall have the right to vote," and (b) that the distribution of revenue to members should be on a "fair and non-discriminatory" basis. It is apparent from the record that appellants' particular interests in the suit related entirely to the second aspect of the Government's charges, that is those involving the Society's internal affairs, and that their motions to intervene were so directed.

During the same year in which the suit was brought it was settled by a consent decree, approved by the District Court. In addition to provisions dealing with what may be called the Society's external affairs, the decree, in broad terms, contained requirements for Board elections by membership vote and for revenue distributions on an equitable basis. Subsequent to the decree, both the vote of the members and their share of license revenues were accorded on a weighted basis relative to the particular member's contribution to the revenue-producing value of all members' contribution to the Society's catalogue, all as determined by the Board of Directors. In 1950, pursuant to a reservation-of-jurisdiction clause in the 1941 decree, a modification of the original decree was effected at the instance of the Government. The modified decree ordered, among other things, that "in order to insure a democratic administration of the affairs of defendant ASCAP . . . [the composition of the] Board of Directors shall, as far as practicable, give representation to writer members and publisher members with different participations in ASCAP's revenue distributions . . . ."

In 1959, this same concern for "democratic administration of the [internal] affairs" of ASCAP and for an equitable distribution of license revenues led the Government to press for further amendments to the decree. In 1960 this resulted in additional court-approved modifications which, it is apparent, represented a substantial improvement over the earlier provisions relating to Board elections and the apportionment of revenues. Contending that the proposed modifications did not go far enough towards ameliorating the position of the small publishers as against the few large publishers, appellants, prior to the adoption of the modified decree, brought the intervention motions now before us. The District Court denied leave to intervene without opinion, stating in its order:

". . . representation of the public and the applicants by the Department of Justice was adequate and in the public interest; . . . applicants are members of and are represented by the Society with their consent; . . . applicants have permitted this cause in which they are not named as parties to proceed to judgment; and . . . it would not promote the interests of the administration of justice to permit the requested intervention . . . ."

Thereafter the District Court entered a judgment approving the proposed modifications to the existing consent decree. Appellants do not appeal from that judgment, but only from the order denying their motions to intervene as of right. We postponed consideration of the question of jurisdiction to the hearing of the case on the merits. 362 U. S. 986.

As the Government and appellants correctly agree, the controlling question on the issue of jurisdiction, the answer to which also determines the merits of this appeal, is whether the appellants were entitled to intervene in

these proceedings as "of right." *Sutphen Estates, Inc.,* v. *United States,* 342 U. S. 19, where the Court said: "If appellant may intervene as of right, the order of the court denying intervention is appealable." *Id.,* p. 20. That case requires rejection of ASCAP's separate contention that the order below was not appealable because not final,[3] and also its further contention that appellate review of intervention has become moot, in that no appeal was taken from the judgment eventuating from the proceedings in which intervention was sought. The latter contention is based on the erroneous hypothesis that review of the intervention order was obtainable only in connection with an appeal from such judgment.

The determinative question—whether appellants were entitled to intervene as "of right"—depended upon their showing both that "the representation of" their "interest by existing parties" to the consent judgment modification proceeding was or might "be inadequate," and that they would or might "be bound by [the] judgment" in such proceeding. See note 2, *supra.*

## I.

Appellants first contend that the representation of their interests by the Government has proven inadequate. Although the most recent decree reduced and limited the Board representation of the 10 largest publishers and provided for a method of revenue apportionment more favorable than that of the past to the smaller and less well-established Society members, appellants' contention is that this amelioration of their position is not adequate

[3] *Allen Calculators, Inc.,* v. *National Cash Register Co.,* 322 U. S. 137, need not be considered to the contrary, for it would seem that the significance of the appeal which was there taken from the judgment below related to this Court's jurisdiction to consider the District Court's denial of *permissive* intervention, and not to its jurisdiction to review the District Court's *order* denying intervention as of right.

to break the control of the larger publishers, and therefore the Government's representation was or may have been inadequate.

Apart from anything else, sound policy would strongly lead us to decline appellants' invitation to assess the wisdom of the Government's judgment in negotiating and accepting the 1960 consent decree, at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting. However, we need not reach the question of the adequacy of the Government's representation of the appellants' interests because, as hereafter shown, it is in any event clear that appellants are not bound by the consent judgment in these proceedings, if their position in this litigation is deemed as aligned with that of the Government. See *United States* v. *Columbia Gas & Electric Corp.*, 27 F. Supp. 116, 119.

We regard it as fully settled that a person whose private interests coincide with the public interest in government antitrust litigation is nonetheless not bound by the eventuality of such litigation, and hence may not, as of right, intervene in it. In *United States* v. *Borden Co.*, 347 U. S. 514, it was ruled that it was an abuse of discretion for the District Court to refuse the Government an injunction against certain acts held violative of the antitrust laws, even though the same acts had already been enjoined in a private suit. It was there stated in clearest terms that "private and public actions were designed to be cumulative, not mutually exclusive" (*id.*, at 518), and, quoting from *United States* v. *Bendix Home Appliances,* 10 F. R. D. 73, 77, " '. . . [T]he scheme of the statute is sharply to distinguish between Government suits, either criminal or civil, and private suits for injunctive relief or for treble damages. Different policy considerations govern each of these. They may proceed simultaneously or in disregard of each other.' " *Id.*, at 518–519.

This principle is certainly broad enough to make it clear that just as the Government is not bound by private antitrust litigation to which it is a stranger, so private parties, similarly situated, are not bound by government litigation. See *United States* v. *General Electric Co.*, 95 F. Supp. 165; *United States* v. *Columbia Gas & Electric Corp., supra; United States* v. *Radio Corporation*, 3 F. Supp. 23; *United States* v. *Bendix Home Appliances, supra;* cf. *United States* v. *Loew's, Inc.*, 136 F. Supp. 13. Indeed § 5 of the Clayton Act, making an adjudication of liability in a government antitrust suit prima facie evidence of liability in a § 4 private suit, would seem to be a definitive legislative pronouncement that a government suit cannot be preclusive of private litigation, even though relating to the same subject matter.

Regarding appellants' position in the case from this aspect, we conclude that they were not entitled to intervene as of right. See *Allen Calculators, Inc.*, v. *National Cash Register Co.*, 322 U. S. 137, 140–141.

## II.

The contention of the appellants that they are entitled to intervene because as members of ASCAP they might be bound by ASCAP's representation of their interests presents a more difficult question. Their claim is that the Society, acting through its Board of Directors, could not adequately represent their interests as small publishers, whose very claim is that they are caught between the practical need to remain in the Society and the impossibility of obtaining adequate representation on the Board of Directors which determines both the weighting of votes in Board elections and the distribution of Society revenues. Since the Board, which negotiated the present consent judgment with the United States, represents, in the words of the Government's complaint, the core of

the very "unlawful combination and conspiracy" against which appellants seek antitrust relief, it is hardly doubtful, taking, as we think we should, the record before us at face value, that ASCAP, acting through its Board, cannot in law be deemed adequately to represent appellants' discrete interests asserted against the Board.

But before the inadequacy of ASCAP's representation of appellants' interests in the consent decree negotiations can give rise to a right of intervention, appellants must further demonstrate that they are or may be bound by the judgment on the litigation. On this score appellants argue that as "class" defendants they are bound by the consent judgment against ASCAP, an unincorporated association, which was sued both as an entity (Fed. Rules Civ. Proc., 17 (b)) and as representing all the Society's members (Fed. Rules Civ. Proc., 23 (a)(1)). See *Tunstall* v. *Brotherhood of Locomotive Firemen & Enginemen,* 148 F. 2d 403.

In so arguing, appellants, however, face this dilemma: the judgment in a class action will bind only those members of the class whose interests have been adequately represented by existing parties to the litigation, *Hansberry* v. *Lee,* 311 U. S. 32; yet intervention as of right presupposes that an intervenor's interests are or may *not* be so represented. Thus appellants' argument as to a divergence of interests between themselves and ASCAP proves too much, for to the extent that it is valid appellants should not be considered as members of the same class as the present defendants, and therefore are not "bound." On the other hand, if appellants are bound by ASCAP's representation of the class, it can only be because that representation has been adequate, precluding any right to intervene. It would indeed be strange procedure to declare, on one hand, that ASCAP adequately represents the interests of the appellants and hence that this is properly a class suit, and then, on the other hand, to

require intervention in order to insure of this representation in fact. The cases establishing the principle of class suits, *Smith* v. *Swormstedt,* 16 How. 288; *Supreme Tribe of Ben-Hur* v. *Cauble,* 255 U. S. 356; and see *Hansberry* v. *Lee, supra,* present no such situation and require no such result.

Any doubt that may exist in this case is dispelled once it is recognized that the Government's original complaint alleged two different types of antitrust violations, two different illegal combinations. It is doubtless true that appellants, through their membership in ASCAP, are or "may be" bound by the consent judgment insofar as it deals with the *external* affairs of the Society; nor is there any claim on this score that ASCAP's representation was not fully adequate.[4] It does not follow from this, however, as to the other alleged antitrust violations, which are of an entirely different nature, involving the interests of the members *inter sese,* that the Society itself is a valid unitary representative for this purpose also, containing as it does the principal factions in the internecine dispute. Cf. *Owen* v. *Paramount Productions,* 41 F. Supp. 557. Or, put differently, as to any claims or defenses which appellants have *against the Government* the representation of ASCAP is entirely adequate, and as to any claims which they may have *against ASCAP* there is nothing to require appellants to bring them into this litigation, simply because they are "bound" for other purposes. Cf. Fed. Rules Civ. Proc., 13 (g).

Turning to the order of the District Court, its remarks that the appellants as "members of the defendant

---

[4] The issue of inadequacy of representation could arise on this phase of the case only on some showing that ASCAP, which ostensibly has the same interests as appellants on this aspect of the litigation, was in fact conducting the litigation in bad faith, collusively, or negligently. No such contention has been made.

Society . . . surrendered . . . (their) right to intervene as individuals," (R. 295) and that they "are members of and are represented by the Society with their consent," are susceptible of two interpretations. If the Court was referring simply to the assertedly representative nature of the suit, its view was no different from the appellants' contention discussed above, and the answer to it is also the same. The purport of the order, however, appears to have been, as the District Court elsewhere intimated, that quite apart from the actual divergence of interest and position between ASCAP and appellants, the contractual and associational relation between the Society and its members, into which they were free to enter and from which they were free to withdraw, at least so far as the law is concerned, both bound appellants as privies to this judgment and precluded any claim of inadequate representation. With respect, we think this begs the question, for appellants' antitrust claim is precisely that, on the one hand, they have no practical choice but to remain in the Society and, on the other, that the dominance of the large publishers within the. Society restricts the competitive opportunities in the industry.

In sum, there is nothing in the relationship of appellants to ASCAP to require us to subvert here the unquestionably sound policy of not permitting private antitrust plaintiffs to press their claims against alleged violators in the same suit as the Government: there is no claim or defense which appellants have against the Government as to which they are not adequately represented by ASCAP, and no rule or policy requiring them to press their claim *against* ASCAP in this government litigation.

## III.

There are two remaining arguments which may be disposed of more briefly. First, it is said that the District

Court should at least have held a hearing in order to determine to what extent appellants' interests diverged from those asserted here by ASCAP. We perceive no occasion for such a procedure, for we think that the present record already shows that as respects the phase of this case which relates to the Society's internal affairs, the position which the appellants assert in favor of an expanded decree cannot be deemed in law to be adequately represented by ASCAP or any of the other defendants, and hence that the consent judgment in this respect can have no binding effect against appellants.

Second, appellants argue that even should they not be legally precluded from bringing a private action, nevertheless the very existence of the outstanding decree would as a matter of comity either preclude further relief or operate to limit the relief some future equity court might decree. Although there is no reason why such a court need consider the present decree as anything but a minimum towards insuring broader representation and more favorable income distribution should a claim for further relief be made out, there is considerable weight to the argument that the court will feel constrained as a matter of comity at least to build on the foundations of the present decree. Cf. *United States* v. *Radio Corporation,* 3 F. Supp. 23. However, it is abundantly clear that this effect is not at all the equivalent of being legally bound, which is what must be made out before a party may intervene as of right. See *Credits Commutation Co.* v. *United States,* 177 U. S. 311; *Sutphen Estates, Inc.,* v. *United States, supra; Cameron* v. *President and Fellows of Harvard College,* 157 F. 2d 993; *Jewell Ridge Coal Corp.* v. *Local No. 6167,* 3 F. R. D. 251. Indeed, appellants' contention on this score is indistinguishable from that of any private litigant whose interests are involved in government anti-

trust litigation. As we have already said, no right of intervention as a party plaintiff exists in that instance.

Inasmuch as the appellants are not, nor may be, bound by the judgment below in the aspects of the case with respect to which they sought intervention, their application to intervene as of right was properly denied and the appeal is

*Dismissed.*

MR. JUSTICE CLARK took no part in the consideration or decision of this case.