UNITED STATES of America,
Plaintiff,

v.

DEPOSIT GUARANTY NATIONAL BANK OF JACKSON and City Bank & Trust Company, Defendants, James E. Smith, Comptroller of the Currency, Intervenor.

Civ. A. No. 4311.

United States District Court,
S. D. Mississippi,
Jackson Division.

March 25, 1974.

---

John M. Toohey, John W. Clark, U. S. Attys., Anti Trust Div., Dept. of Justice, Washington, D. C., and Robert E. Hauberg, U. S. Dist. Atty., Jackson, Miss., for plaintiff.

L. Arnold Pyle, Jackson, Miss., and Philip L. Roache, Jr., Washington, D. C., for defendants.

Chas. H. McEnerney, Jr., Treasury Dept., Washington, D. C., for the Comptroller of the Currency, for intervenor.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

Following a proposed merger of Deposit Guaranty National Bank, Jackson, Mississippi, and City Bank and Trust Company, Natchez, Mississippi, and following approval of the merger by The Comptroller of the Currency, the Antitrust Division of the Department of Justice filed the above styled action against both banks under Section 7 of the Clayton Act, 15 U.S.C. § 18, alleging that the merger was anti-competitive. After discovery and lengthy negotiations leading toward a settlement, the government agreed to the merger conditioned upon

Deposit Guaranty's consent to an injunction that it would not merge or consolidate with any commercial bank in the State of Mississippi for a period of ten years except with the approval of the Attorney General of the United States. A Final Judgment, containing the terms of the injunction in Paragraph IV was entered herein on December 26, 1969.

During this last year Deposit Guaranty proposed a merger with Leflore Bank and Trust Co. (Leflore Bank), a commercial bank in Greenwood, Mississippi. The Attorney General has refused to approve the merger, and Deposit Guaranty, on December 20, 1973, filed its motion to set aside the consent judgment of December 26, 1969, on the grounds that it is void and constitutes a misrepresentation and fraud on the Court. The Comptroller of the Currency has intervened under his statutory right to do so (12 U.S.C. § 1828(c)(7)(D)), also contending that Paragraph IV of the consent judgment is void in that it operates to transfer power to the Attorney General to regulate bank mergers in direct derogation of the authority granted by Congress to the Comptroller of the Currency through the Bank Merger Act of 1966, 12 U.S.C. § 1828(c).

The government has responded denying that the judgment is void and averring that the judgment was consented to after full and careful negotiation; that the Attorney General has acted within the scope of the judgment in denying Deposit Guaranty's application to acquire Leflore Bank; that the Court properly exercised its broad authority to provide effective relief in an antitrust case; and that the judgment is not in conflict with Congressional intent as expressed in the antitrust laws and the Bank Merger Act of 1966.

At a hearing on the motion, the parties offered documentary evidence and live testimony, and briefs have been filed.

By way of background in this litigation, the Court notes that immediately prior to the filing of the original suit herein, the Department of Justice, Antitrust Division, filed a similar antitrust action against First National Bank (FNB) of Jackson, Mississippi, and the Bank of Greenwood, being cause No. 4310 on the docket of this Court, the actions being similar in that the acquiring banks were and are the two largest banks in Mississippi, and, at the time of the proposed mergers, City Bank & Trust Co., Natchez, Mississippi, subject of the merger with Deposit Guaranty, and Bank of Greenwood, Greenwood, Mississippi, subject of the merger with FNB, were both claimed by the government to be dominant banks in their respective market areas. The Comptroller of the Currency, who had approved both mergers, intervened in both cases. Following a week's trial in cause No. 4310, Judge Walter L. Nixon, Jr., the presiding Judge, issued a lengthy opinion, United States of America v. First National Bank of Jackson et al., D.C., 301 F.Supp. 1161, in which he reviewed the economic and banking history of the State of Mississippi, Leflore County, and the City of Greenwood, Greenwood being the county seat of Leflore County, and, upon the evidence before him, found that the merger of FNB and the Bank of Greenwood, even though a dominant bank, not only had no anti-competitive effect in the relevant geographic area, Leflore County, but actually would have the effect of stimulating competition; further, he found that even if the merger were anti-competitive, the convenience and needs of the community clearly outweighed any anti-competitive effects. Following Judge Nixon's decision, which was not appealed, the Final Judgment was entered in this case.

After a brief recitation in the judgment that it was being taken without trial and without adjudication of any issue of law or fact, and without admission by any party with respect to the issues, and upon the consent of plaintiff and the defendant banks, Paragraph IV provided as follows:

"Deposit Guaranty is enjoined and restrained for a period of ten (10) years

from the date of entry of this Final Judgment from acquiring control over or merging or consolidating with any commercial bank in the State of Mississippi, other than defendant City Bank & Trust Company, unless permission is first obtained from the Attorney General."

Deposit Guaranty now contends that it would never have agreed to the injunction except upon the assurances of plaintiff's attorneys in the antitrust division of the Department of Justice that the above language would not be a bar to a merger with a small or "foothold" bank. Deposit Guaranty asserts that Leflore Bank is such a bank, and that the Attorney General's refusal to permit Deposit Guaranty to merge with the Leflore Bank is a misrepresentation and fraud committed against Deposit Guaranty and on the Court and warrants the setting aside of the judgment. Deposit Guaranty relies on the affidavits of two of its officers who participated in settlement negotiations and the statement of plaintiff's counsel in open Court prior to the entry of the judgment.

W. P. McMullan, Jr., president and chief operating officer of Deposit Guaranty Corporation, parent of Deposit Guaranty, and vice-chairman of the board of directors of Deposit Guaranty, stated that he was president of Deposit Guaranty at the time of the settlement negotiations, which occurred after the decision was rendered in United States of America v. First National Bank of Jackson, reported at 301 F.Supp. 1161. He attended meetings with representatives of the Department of Justice in an attempt to settle the action herein. He stated that Richard W. McLaren, Assistant Attorney General, Antitrust Division of the Department of Justice, represented to him that the final judgment, eventually entered, would not be used by the Department of Justice to prevent Deposit Guaranty from merging or acquiring a small bank, or a so-called foothold bank in the State of Mississippi.

He stated that representations were made to him that the Department of Justice would have no objection to Deposit Guaranty's de novo entry into any area in the state where allowed by state law. McMullan stated that it was a crucial condition to the bank's agreement to enter into a consent judgment that the bank be able to acquire small banks and foothold banks and that he would not have been willing for Deposit Guaranty to enter into the judgment, nor would he have agreed to its entry if said judgment would prevent acquisition of or merger with small banks and foothold banks. It was his opinion as a banker in Mississippi for 23 years that Leflore Bank is not only a small bank but a foothold acquisition.

John P. Maloney, chairman of the executive committee and executive vice-president of Deposit Guaranty Corporation, and general counsel for Deposit Guaranty, made a similar affidavit. At the time of the negotiations he was senior vice-president and attorney of Deposit Guaranty and participated in the efforts to settle the case. He stated that it was his unalterable position that Deposit Guaranty would not be completely foreclosed from acquiring or merging with commercial banks. An understanding was reached that any final judgment agreed upon would not prevent Deposit Guaranty from acquiring or merging with small banks providing they were not the leading bank in the city or area. He stated that he otherwise would not have agreed to the final judgment. He further stated that from his 20 years' experience in the banking industry it is his opinion that Leflore Bank is a small bank and also a foothold bank.

Prior to the entry of the Final Judgment, this Court held a hearing on last minute efforts by the City of Natchez and Britton & Kuntz, a commercial bank in the City of Natchez, to block the merger between Deposit Guaranty and the City Bank & Trust Company of Natchez.[1] The Comptroller, intervenor,

---

1. The City of Natchez withdrew its motion, and the hearing proceeded on the motion of Britton & Kuntz.

on the advent of the proposed settlement, had withdrawn from the case, but re-entered as an intervenor to join plaintiff and Deposit Guaranty in resisting the aforesaid motions. During the proceedings which resulted in the denial of the motion to intervene filed by Britton & Kuntz, and in the subsequent entry of the Final Judgment, Mr. Donald I. Baker, speaking on behalf of the Antitrust Division of the Department of Justice, first gave his reasons for resisting the motion of Britton and Kuntz, and then made the following statement:

"Let me just briefly outline what the basis of the government' enforcement effort is in this field, because it bears directly on the decision to settle this case, the decision I would submit based on sound exercise of discretion. The decision to settle antitrust cases is based on at least three factors: first, the probability of success at trial. It is obviously the matter of both theory and evidence. Secondly, the amount of government resources required to try the case and probably to appeal from an adverse decision. Thirdly, the adequacy of the relief, particularly the adequacy of relief as compared with what the government might obtain at trial.

As I am sure Your Honor is aware, the Bank Merger Act of 1966, which governs in this area has two distinct elements, and I think one of our problems here today is that two are getting rolled together. First of all is the Section 7 competitive standard. Does the merger substantially lessen competition in any line of commerce in any section of the country.

Secondly, if it does, if it arises to the dignity of being an anti-competitive merger, is that adverse affect on competition clearly outweighed in the public interest by the tendency of the merger to serve convenience and need of the community. It is very important to remember that you never reach the convenience and needs question until you have answered the basic question on competitive effect.

The defendant's enforcement efforts in the bank merger field have from the beginning focused primarily on local markets. That is because the Supreme Court emphasized in 'Philadelphia National Bank' banking is primarily a local service business as far as any trust is concerned. Most of the department's bank merger suits have challenged horizontal acquisitions of direct competitors in local banking markets. In addition, the department has brought a few recent cases challenging so-called market extension mergers by leading banks or leading local competitors.

The defendants enforcement efforts against market extension mergers reflect a turn-about merger trend that have made objection to state-wide dominance by systematic acquisition of the leading banks in local markets. The State of Oregon is a classic example. The long trend of acquisiton, most before 1960, made it possible for two dominant banks, roughly equal size, to acquire control of more than 85% of all the bank deposits in the whole state.

Similarly in North Carolina a trend of market extension acquisitions has enabled the five largest banks to acquire control of approximately 70% of all deposits in the state. This represents an increase of 30% in the twelve years since 1957. Such a trend of acquisitions enables the state-wide leaders to become the dominant influence in most, if not all, local banking markets.

Accordingly, the Department of Justice has filed several recent cases to enjoin state-wide leaders from acquiring banks with leading local market positions.

This is one such case and the United States against First National Bank of Jackson was another.

These cases have generally rested on the theory that the acquiring bank would be eliminated as a potential entry into the market of the acquired

bank and that the acquired bank's leading local market position would be entrenched by the merger.

The cases follow closely the types of rules announced by the Supreme Court in Proctor & Gambel and U.S.A. against El Paso. So far, however, the Department of Justice has not yet secured a victory on this theory in the banking field. Not to say we won't but the issues are close and difficult.

This case and a companion case in Greenwood were filed on the theory that the complaint makes clear that there was a threat in Mississippi to leading banks, Deposit Guaranty and First National Bank of Jackson, acquiring a very substantial dominance of banking in Mississippi. In these two acquisitions in Greenwood and Natchez, and the earlier acquisitions by both leading banks in Greenwood we saw as a threat of statewide dominance.

The proposed consent decree enables us to deal with a situation. It has a basic provision of a ten year injunction, which prevents future acquisitions of commercial banks in Mississippi by defending Deposit Guaranty without the prior approval of the United States.

This we believe is sufficient because the trend of acquisitions in Mississippi has not gone so far as in many other states. The two largest banks in Mississippi now accounting for approximately 25% of all deposits in the state I believe would require roughly 27% after the two cases. Even the five largest banks in Mississippi account for less than one-third of such deposits.

The ten year injunction provides for effective relief because it offers us protection against this trend. It deals with the trend at a relatively early stage. We intend to use the decree to prevent defendant Deposit Guaranty from entering new markets by buying leading or substantial local banks.

We would not prevent Deposit from entering de novo or through small acquisitions, so-called foothold acquisitions. But the acquisition of leading or substantial banks is out. We simply would intend to cover the kind of acquisitions made here, made in Greenville and in Greenwood.

The decree, of course, does not affect the activities of the other large bank, First National Bank of Jackson, but I can assure you, Your Honor, that First National's acquisitions will be subject to careful scrutiny.

We believe that such action, together with this decree, will be sufficient to prevent the two banks from acquiring overwhelming dominance of Mississippi banking.

This, we submit, is the effective relief."

Counsel representing the Comptroller of the Currency, in speaking to the Britton and Kuntz motion, said:

"The only thing I would like to emphasize is the fact that the Britton & Koontz Bank comes here really as a private party seeking protection from competition as opposed to a party coming basically in on public interest. The only public interest Britton & Koontz could possibly claim is a public claim of stockholders, which is a limited group. Coming as a private party, they cannot intervene in suits which are institutued by the United States in the public interest. This has been held in United States v. Jellek [United States v. General Electric Co., D. C.] 95 F.Supp. 165, and supported in the Sam Fowlkes case [Sam Fox Pub. Co. v. United States], 366 U.S. 683 [81 S.Ct. 1309, 6 L.Ed.2d 604]. The basic reason is that because there are different policy considerations that the public interest, when you consider the public interest and when you consider the position of the private parties. Britton & Koontz has its recourse at law if it wishes to take advantage of it. It can file a private suit and proceed with the matter.

There is one comment that counsel for Britton & Koontz made that I would like to point out. Counsel stated that Britton & Koontz felt it would be pushed out, out of the area, by this merger. Yet, if you look at the history of Mississippi where some of the mergers have occurred not one bank has ever been pushed out of the area. In fact, every bank that has remained has gained and profited by the mergers of First National and Deposit Guaranty as these banks have stimulated business and competition in the area and have caused the banks to remain and obtain part of that business. So they have actually gained.

No one has been pushed out by any merger, so without so showing as to this point I think this point is not well taken.

I think that is all I really have to say, Your Honor, except to make a comment that the Comptroller of the Currency did not sign the decree because it is not necessary for him to sign it. This matter was taken up at the time the stipulation was filed. We are not a party to any decree. We are intervenors in a public interest by matter of right by statute. Congress suggested that the Comptroller intervene in these cases to present to the Court banking considerations by the experts in the field and that is why we are here, so there is no need for us to sign any decree. It makes no sense for us to sign any decree. That is all I have to say."

Counsel for Deposit Guaranty also opposed the motion to intervene.

It is the statement of Baker, as well as the affidavits of McMullan and Maloney, that Deposit Guaranty relies on for its contention that Paragraph IV was not intended to be as broad as it reads, but was agreed to on the representations that the Attorney General would except from its terms the acquisition of a small or foothold bank.

The response of the Department of Justice to this contention is that it has represented at all times that it does not intend to exercise its discretion to deny Deposit Guaranty mergers with foothold banks, and *it still intends to honor those representations*. Its answer is simply that the Leflore Bank is not a foothold acquisition under published Department of Justice standards as reflected in the Department's Merger Guidelines, published May 30, 1968, a date the Court notes followed the filing of this suit by two days. A copy of these guidelines has been furnished the Court. Their stated purpose is to acquaint the business community, the legal profession and other interested groups and individuals with the standards currently being applied by the Department of Justice in determining whether to challenge corporate acquisitions and mergers under Section 7 of the Clayton Act. "The responsibilities of the Department of Justice under Section 7 are those of an enforcement agency, and these guidelines are announced solely as a statement of current Department policy, subject to change at any time without prior notice, for whatever assistance such statement may be in enabling interested persons to anticipate in a general way Department enforcement action under Section 7." Under paragraph 2, it is stated that "the primary role of Section 7 enforcement is to preserve and promote market structures conducive to competition. Market structure is the focus of the Department's merger policy chiefly because the conduct of the individual firms in a market tends to be controlled by the structure of that market. . . . Accordingly, the Department's enforcement activity under Section 7 is directed primarily toward the identification and prevention of those mergers which alter market structure in ways likely now or eventually to encourage or permit noncompetitive conduct." The guidelines add: "In certain exceptional circumstances, however, the structural factors used in these guidelines will not alone be conclusive, and the Department's enforcement activity will necessarily be based on a more complex and inclusive

evaluation." The guidelines, as adopted, treat three kinds of mergers, horizontal, vertical, and conglomerate, noting that a market extension merger, i. e., one involving two firms selling the same product, but in different geographic markets, is classified as a conglomerate merger. Paragraphs 17, 18, 19, 20 and 21 pertain to conglomerate mergers. Paragraph 18 describes mergers involving a potential entrant; paragraph 19 describes mergers creating a danger of reciprocal buying; paragraph 20 describes mergers which entrench market power and, in dealing with the conglomerate field as a whole, states that it is one in which the Department considers it necessary to carry on a continuous analysis of the ways in which mergers may have significant anti-competitive consequences beyond those covered by these guidelines; and, finally, paragraph 21 providing that the standards set forth in paragraph 9, *"Failing Company,"* are normally applied, except that in marginal cases involving the application of paragraph 18(a)(iii) and (iv), the Department may deem it inappropriate to sue under Section 7 even though the acquired firm is not "failing" in the strict sense.

Plaintiff contends that the proposed merger violates paragraph 18(a)(iii) and 18(a)(iv) of the Merger Guidelines. Paragraph 18 is as follows:

"18. *Mergers Involving Potential Entrants.*

(a) Since potential competition (*i. e.,* the threat of entry, either through internal expansion or through acquisition and expansion of a small firm, by firms not already or only marginally in the market) may often be the most significant competitive limitation on the exercise of market power by leading firms, as well as the most likely source of additional actual competition, the Department will ordinarily challenge any merger between one of the most likely entrants into the market and:

(i) any firm with approximately 25% or more of the market;

(ii) one of the two largest firms in a market in which the shares of the two largest firms amount to approximately 50% or more;

(iii) one of the four largest firms in a market in which the shares of the eight largest firms amount to approximately 75% or more, provided the merging firm's share of the market amounts to approximately 10% or more; or

(iv) one of the eight largest firms in a market in which the shares of these firms amount to approximately 75% or more, provided either (A) the merging firm's share of the market is not insubstantial and there are no more than one or two likely entrants into the market, or (B) the merging firm is a rapidly growing firm.

In determining whether a firm is one of the most likely potential entrants into a market, the Department accords primary significance to the firm's capability of entering on a competitively significant scale relative to the capability of other firms (*i. e.,* the technological and financial resources available to it) and to the firm's economic incentive to enter (evidenced by, for example, the general attractiveness of the market in terms of risk and profit; or any special relationship of the firm to the market; or the firm's manifested interest in entry; or the natural expansion pattern of the firm; or the like).

(b) The Department will also ordinarily challenge a merger between an existing competitor in a market and a likely entrant, undertaken for the purpose of preventing the competitive "disturbance" or "disruption" that such entry might create.

(c) Unless there are exceptional circumstances, the Department will not accept as a justification for a merger inconsistent with the standards of this paragraph 18 the claim that the merger will produce economies, because, among other reasons, the Department believes that equiva-

lent economies can be normally achieved either through internal expansion or through a small firm acquisition or other acquisition not inconsistent with the standards herein."

Plaintiff, in further contending that Leflore Bank is not a foothold acquisition, introduced as an exhibit at the hearing a copy of the government's brief in Cause No. 4310, United States of America v. First National Bank of Jackson et al., supra, reflecting that the Department of Justice in that case took the position that (1) there are no foothold banks in Leflore County, and that (2) any commercial bank merger following that of First National Bank with the Bank of Greenwood would be anti-competitive. The Court has reviewed this brief and disputes the assertion under (1) above. In the brief the government referred to the market area as Leflore County, describing it as highly concentrated with only five competitors. The Bank of Greenwood, the acquired firm, was listed as the dominant bank with 45% of the deposits and 50% of the loans, and was further characterized as holding more than 2⅓ times the market share of the next largest bank, and that it was the most aggressive bank in the market area. The brief referred to the three largest banks in the market, including the Bank of Greenwood, as controlling 80% of the deposits and 81% of the loans. The brief did not identify the position of the banks behind the Bank of Greenwood. Elsewhere in its brief, the government said that benefits could also be achieved by a merger of FNB with one of the smaller banks in Leflore County. The brief otherwise makes no reference to the banks in Leflore County other than to refer to them, excluding the Bank of Greenwood, as "smaller" banks. As to (2) above, the brief does say that approval of the merger might result in the acquisition of another bank in Leflore County by FNB's principal rival, Deposit Guaranty, and should such be the case, it would further reduce the restraining influence of potential entrants. Other than agreeing that this statement appears in the brief, the Court foregoes any comment on this conclusion, as it goes to the merits of the instant case, had it been tried, or if it may yet be tried.

In considering whether the proposed merger of Deposit Guaranty with Leflore Bank is proscribed by the guidelines it is necessary to know the relative strength of the five banks in Leflore County, the accepted market area. Four of these banks are in the City of Greenwood. The fifth bank is the Itta Bena branch of the Grenada Bank, the Itta Bena branch being only 11 miles from Greenwood. The Grenada Bank has deposits of roughly $100,000,000.00, far greater than any of the four Greenwood banks. The dollar amount of deposits for the Greenwood banks for the year end of 1965 and 1972 are listed below together with the percentage of the market, as shown by deposits, for year end of 1965 and 1972, and the percentage growth for the seven year period from December 1965 to December 1972:

| BANK | AMOUNT OF DEPOSITS 12/65 | AMOUNT OF DEPOSITS 12/72 | % OF DEPOSITS 1965–1972 | | % OF GROWTH 12/65–12/72 |
|---|---|---|---|---|---|
| | (in millions) | | | | |
| First National Bank of Greenwood | 2,572 | 12,924 | 8 | 17.1 | 402.5 |
| Bank of Commerce | 8,492 | 15,076 | 18.6 | 20.0 | 77.5 |
| Bank of Greenwood (merged with FNB– 1969) | 23,524 | 32,500 | 49 | 43.1 | 38.2 |
| Leflore Bank & Trust Co. | 11,188 | 14,918 | 24.4 | 19.8 | 33.3 |

Market shares of all five banks in Leflore County are as follows:

| BANK | TOTAL DEPOSITS 12/72 (in millions) | MARKET SHARE |
|---|---|---|
| First Nat'l Bank (Bank of Greenwood branch) | 32,500 | 40.1% |
| Bank of Commerce | 15,076 | 18.6 |
| Leflore Bank & Trust | 14,918 | 18.4 |
| First National Bank of Greenwood | 12,924 | 15.9 |
| Grenada Bank (Itta Bena Branch) | 5,671 | 7. |
| | $81,089 | 100.0% |

■ Apparently, the Department of Justice in applying the formula set out in paragraph 18(a)(iii) considered the Deposit Guaranty as the most likely entrant into the market. It then considered Leflore Bank as one of the four largest firms in a market in which the shares of all five banks equalled 100%, with Leflore's share equalling 18.4, and therefore objected to its merger with Deposit Guaranty. There are two things wrong with this application. To begin with there are not as many as eight firms (banks) in Leflore County, and Deposit Guaranty is not the most likely entrant into the market, about which more will be said later.

■ Paragraph 18(a)(iv) clearly does not apply because, again, Deposit Guaranty is not the most likely entrant, and Leflore Bank is not a rapidly growing firm. Nor do the Merger Guidelines offer a definition of "foothold" as such. Paragraph 18(c) apparently does not condemn a merger with a small firm. Having found that the guidelines relied on by the government are not appropos, this Court does consider the evidence offered by Deposit Guaranty as to its status as a de novo entrant, and as to the status of the Leflore Bank in its area. To begin with, as found by Judge Nixon in United States v. First National Bank of Jackson and as the government concedes herein, commercial banking in Leflore County has a high degree of concentration. Although population in the City of Greenwood has slowly increased in recent years, the county-wide population has decreased. Five banks presently saturate the county. Deposit Guaranty has made it abundantly clear that it has not been and is not a potential entrant into the commercial banking market of Leflore County by way of a de novo entrance. Deposit Guaranty is the largest bank in Mississippi, with its major banking facilities in the state capital, Jackson, a little less than 100 miles from Greenwood. Along with FNB, its closest competitor on a state wide level, the two banks have 25 percent of statewide deposits. As indicated in the Baker statement, quoted above, the acquisition by FNB of the Bank of Greenwood and the proposed acquisition by Deposit Guaranty of the Leflore Bank would add at most 2%. In its formal proposal, necessarily a comprehensive document, and a copy of which is in evidence, Deposit Guaranty shows the number of banks in Leflore County, the decreasing population, and the fact that Deposit Guaranty has never historically gone de novo into a new area. Of the 182 commercial banks in Mississippi, Deposit Guaranty has correspondent business with 177 of them, and desires to keep these relations on a corresponding basis, which de novo entrances would impair. Its judgment is that it is not economically feasible to enter

the area de novo, and further, as a sixth bank, its deposits would necessarily have to come from the other five. As said by Judge Nixon in United States v. First National Bank of Jackson: "The geographic market extension merger does not alter the number of competitors that are in the relevant market . . . and the same number of banking alternatives exist after the merger as before." It follows that the degree of concentration would normally remain unchanged, whereas an added bank, de novo, would add to the degree of concentration. It also follows that if the Leflore Bank, next to the smallest bank in Greenwood, continues to lose position, the trend will be away from concentration.

The president of Leflore Bank, W. C. Neill, and four members of the board of directors, testified at the hearing. The board members were in accord that early in its history Leflore Bank was the second largest bank in Greenwood. It has slipped to a poor third, and threatens to be overtaken by the fourth largest bank, First National Bank of Greenwood, which was organized in 1965, and which has had, during the interim, an exceptional growth of 402.5 percent over its initial deposits of $2,572,000.00, whereas Leflore Bank, since 1965, has experienced a growth of only 33.3 percent, the least of any of the banks in Greenwood. The directors said that Leflore Bank has long outgrown its facilities, and should have been remodeled at least fifteen years ago. It is not a full service bank and, with a capital structure of only $1,500,000.00, has a limited loan capacity of $225,000.00. The senior officers are old and ill. The bank has no training facilities, and has been unable to find personnel to take over the operation of the bank at salaries it can afford to pay. Mr. Neill, the major stockholder, as well as president, confirmed that he is 79 years old, and has had serious and disabling surgery. P. L. Webb, the vice-president, is 69 years of age and has had recent heart surgery. The next man in line is 55 years old, and is not qualified

to head the bank. Leflore Bank has no one presently in training for top management. According to Neill, any successful banker in Greenwood must be familiar with agriculture, the primary business of the county. He has tried, unsuccessfully, to find replacements for himself and others, saying his bank cannot afford the salaries aggressive bank personnel today can demand. Neill said that, after his surgery, he approched Deposit Guaranty on a proposed merger as the only way he knew to save his bank, and that, without a merger, Leflore Bank is stagnant.

Deposit Guaranty also offered the testimony of Dr. Kenneth W. Hollman, a member of the Department of Economics, University of Mississippi, tendered as an expert in banking. He received his doctorate in economics and teaches courses in money and banking. He has made studies and written articles on commercial banking in Mississippi and has knowledge of the relative size of banking in Mississippi. He acknowledged that he was employed by Deposit Guaranty to examine Leflore Bank to determine if it was a small bank or a "foothold" acquisition. He visited the bank, studied its reports and structure, and studied extant literature on foothold acquisitions. He admitted a scarcity of definitions of "foothold" as applied to banking, saying that it is a fairly new concept. But, from his own knowledge, studies and his investigation, it was his opinion that Leflore Bank is a small bank as well as a foothold bank. He determined its size on the basis of services offered and the fact that its deposits are under $15,000,000.00, itself indicative of smallness. Deposit Guaranty's proposed merger application contains vivid documentation of how agricultural farms in Leflore County have diminished in number, while growing in size, requiring the utilization of large mechanical equipment, such as tractors and cotton pickers, the latter costing as much as $28,000.00 per unit. Dr. Hollman's testimony was that agricultural lending institutions have grown competitively in

Leflore County, because the largest customer of a small bank cannot get sufficient lending. He pointed to the fact that FNB's merger with the Bank of Greenwood is the only source of large commercial loans, increasingly in demand, the alternatives being agricultural lending institutions and out-of-state banks. The Court judicially notes that Mississippi is a capital deficit state.

As to Leflore Bank's status as a foothold acquisition, Dr. Hollman used five criteria, posed in question form: (1). Is the bank an aggressive competitor? His answer was no because it has recently lost its second position and is threatened with a further loss of position; the bank needs new management and a new building; its credit loans declined in the last year from 56% to 51%; and its likelihood of reversing its present trend is not probable. (2). What is Leflore Bank's size amongst the banks in its area? His answer was that Leflore Bank is third in size of the four banks in Greenwood, and much smaller than most banks in surrounding counties. (3). Does Leflore Bank have market power over other banks? The answer—no, it is the least competitive. (4). What is its rate of growth? His answer was that the First National Bank of Greenwood, chartered in 1965, started out small and at the end of 1973 had garnered 15.9 percent of the market, while Leflore Bank, at the end of 1973, had declined to 18.4 percent of the market. (5). What is the best estimate of the future rate of growth if no changes are made? His answer was that the future of Leflore Bank is discouraging. When First National Bank of Greenwood surpasses Leflore Bank, its position will not necessarily stabilize for it has a real succession problem and inadequate facilities. Dr. Hollman felt that no one criteria was determinative, but that all five must be considered. By his answers to the above questions, it was his opinion that Leflore Bank is a foothold acquisition, as well as a small bank.

As to the motion to vacate the judgment urged by both Deposit Guaranty and the Comptroller of the Currency on the grounds that the judgment is void as a usurpation of authority delegated by the Congress to the Comptroller, the Court is inclined to agree. At the hearing in this case prior to the entering of the consent judgment, this issue was not thought of or explored by any of the parties nor by the Court. According to the Department of Justice's brief herein, some four other antitrust cases filed by the Department of Justice against banks have since been concluded by consent judgments without the issue having been raised. Except for the following comment, the Court does not find it necessary to reach this issue in its disposition of the motion. In the oft cited case of United States v. Philadelphia National Bank et al., 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915, Justice Harlan, in a dissent, criticized the majority court for finding that banks were subject to antitrust suits under the Clayton Act, in view of what Justice Harlan considered the Congressional intent in the Bank Merger Act of 1960. He said: "For 10 years—everyone—the department responsible for antitrust law enforcement, the banking industry, the Congress, and the bar—proceeded on the assumption that the 1950 amendment of the Clayton Act did not affect bank mergers. This assumption provided a major impetus to the enactment of remedial legislation, and Congress, when it finally settled on what it thought was the solution to the problem at hand, emphatically rejected the remedy now brought to life by the Court." Justice Harlan foresaw that the holding of the majority of the Court that banks are subject to Section 7 of the Clayton Act would "in large measure serve to frustrate the objectives of the Bank Merger Act, . . ." In a reluctant concurrence in a later decision in United States v. Third National Bank, 390 U.S. 171, 88 S.Ct. 882, 19 L.Ed.2d 1015, Justice Harlan continued to disagree in the banking field, with the

"numbers game" test for determining Clayton Act violations which was adopted in United States v. Philadelphia National Bank, supra.

This Court's concern is that by the artifice of a consent judgment providing injunctive relief for a fixed period of time, the Department of Justice forecloses the right of a bank to apply for a merger within said period, which in turn dispossesses the Comptroller of his right to approve such a merger under the procedural safeguards of the Bank Merger Act, despite the fact that the Act includes the right to the Attorney General to object to the merger on antitrust grounds. The Court is not impressed with the obvious disagreement between two agencies of the same government, on matters of policy. However, the Court finds it unnecessary to rest a decision on this feature of the motion, i. e., the theory of one agency usurpation of the delegated authority of another agency.

██ This Court finds that all the parties hereto agree that the Consent Judgment, notwithstanding its literal language to the contrary, contains a built in exception which does permit Deposit Guaranty to merge within the proscribed period with a small or foothold bank. The Court further finds that the particular Merger Guidelines relied on by the Department of Justice are not applicable to the proposed merger herein, and even if paragraph 18(a)(iii) and (iv) are applicable, the merger would still be permissible under paragraph 21. The Court finds that, under the circumstances of this case, based on the evidence before the Court, Leflore Bank & Trust Company is a foothold acquisition, clearing the way for Deposit Guaranty to proceed with its application to merge before the Comptroller of the Currency pursuant to the Bank Merger Act of 1966.

An appropriate order or orders may be submitted with costs of court taxed to the government.