John H. X. WASHINGTON, Harry William Bundy, Daniel W. Lightfoot, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Gerald A. KELLER, Edwin Goodlander and Hon. Harry R. Hughes, Defendants.

Civ. No. T–78–1730.

United States District Court,
D. Maryland.

Nov. 14, 1979.

Paul D. Bekman, W. Michel Pierson and E. Dale Adkins, III, Baltimore, Md., for plaintiffs.

Stephen H. Sachs, Atty. Gen. of Maryland, Stephen B. Caplis and Paul Cuzmanes, Asst. Attys. Gen., Baltimore, Md., for defendants.

Justin N. Scharf, Hagerstown, Md., proposed intervenor, pro se.

THOMSEN, Senior District Judge.

This action was filed in September 1978 by two inmates of the Maryland Correctional Institution (MCI) against its Superintendent and the men who were then the Governor of the State and the Commissioner of the Maryland Division of Correction. Plaintiffs complained of overcrowding, inadequate medical conditions and inadequate food service; they sought injunctive relief. Those defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment. In response thereto plaintiffs filed an elaborate "traverse", supported by affidavits of many inmates.

This court thereupon appointed counsel for plaintiffs, who, pursuant to leave granted by the court, filed an amended complaint in January 1979, which, inter alia, asked that the case be certified as a class action.[1] The attorney for the defendants did not

---

1. The prayers of the amended complaint read as follows:

1. Enter an order pursuant to Rule 23 of the Federal Rules of Civil Procedure deter-

object and the case was so certified.[2] Defendants thereupon filed an answer admitting certain allegations of the complaint, denying others, and neither admitting nor denying the jurisdictional allegations. The newly elected Governor and the newly appointed Commissioner of Corrections have been substituted as parties defendant in place of their predecessors.

After months of negotiation counsel for the respective parties presented to the court on September 21, 1979, a proposed consent decree. The court thereupon entered an order directing that a "Notice to Class Members" setting out the substance of the proposed decree be posted at various locations throughout MCI,[3] and directing that any objections to the proposed consent decree be filed with the court on or before November 1, 1979.[4] One such objection was received, but at the hearing on the consent decree held on November 8, 1979, the objec-

mining that this action is to be maintained as a class action;

2. Issue temporary and permanent injunctions forbidding defendants to house more inmates in any one cell than the cell was designed and equipped to house.

3. Issue temporary and permanent injunctions forbidding defendants to house more inmates in the Maryland Correctional Institution, Hagerstown, Maryland, than it can house consistent with the safety, comfort and adequate rehabilitation of the inmates therein.

4. Issue temporary and permanent injunctions forbidding defendants to admit prisoners to the Maryland Correctional Institution, Hagerstown, Maryland, in a number above the capacity of the institution.

5. Issue temporary and permanent injunctions forbidding defendants to admit prisoners to the Maryland Correctional Institution, Hagerstown, Maryland, until the number of inmates confined therein is reduced to the capacity of the institution and the conditions complained of herein are corrected.

6. Issue temporary and permanent injunctions compelling defendants to provide an adequate number of suitable medical personnel at the Maryland Correctional Institution, Hagerstown, Maryland, to meet the medical needs of the population of said institution.

7. Issue temporary and permanent injunctions compelling defendants to provide adequate facilities for the preparation and service of sanitary and nutritional food portions at the Maryland Correctional Institution, Hagerstown, Maryland.

8. Issue temporary and permanent injunctions compelling defendants to provide a sufficient number of educational and training programs and of jobs that all inmates interested in participating will have the opportunity to do so.

9. Issue temporary and permanent injunctions compelling defendants to insure that the conditions under which persons in their custody are confined meet statutory and constitutional prerequisites.

10. Declare that the acts and omissions of defendants and the conditions complained of herein constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and deprive plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution.

11. By its declaratory decree specify minimum standards which defendants must meet under the United States Constitution and statutory standards herein referred to.

12. Appoint a Special Trustee or Committee to insure prompt implementation of the court's order and to protect the rights of plaintiffs.

13. Retain jurisdiction over this cause and over defendants, each of them, and their successors in office until such time as the court is satisfied that the acts and omissions and conditions complained of herein no longer exist and will not recur.

14. Grant such other and further relief as this Honorable Court may deem appropriate.

2. The order entered thereon provided:

ORDERED, that the above-entitled case be certified as a class action pursuant to the provisions of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, and that the class shall consist of all persons who are now or who will be in the future confined to the Maryland Correctional Institution, Hagerstown, Maryland, and who are State prisoners who have been convicted and sentenced in state courts and remanded to the custody of the Commissioner of Corrections; and

It is further ORDERED that a suitable notice listing the issues in this case and signed by counsel for plaintiffs be posted in one or more agreed places within the confines of the Maryland Correctional Institution, Hagerstown, Maryland.

3. The evidence shows that the posting requirements of this court's order of September 25, 1979, were complied with.

4. Because the former class representatives had been transferred from MCI to other correctional institutions, a new class representative, Joseph Jefferson, was added as a party plaintiff.

tor (Thomas Saul) took the stand and withdrew his objections.

Meanwhile Justin N. Scharf, Esq., a citizen, taxpayer and resident of Maryland, filed a motion to intervene as a party defendant, "as a matter of right or permissive intervention or both," stating reasons set out in the margin.[5] Memoranda in opposition to Scharf's motion to intervene were filed by the defendants and by the plaintiffs.

At the hearing on November 8, 1979, Scharf argued at length in support of his motion, elaborating on the points raised therein. He relied particularly on his contention that *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), held that "double-bunking" is not unconstitutional. He contended that the proposed consent decree subjected him to increased taxes and potential danger from felons who would be released pursuant thereto, and argued that the court should not sign that decree because it would grant the plaintiff class relief which is not required by the Constitution and deprived him (Scharf) of constitutional rights. He further argued that his rights were not adequately represented by the Attorney General and his subordinates, who, Scharf contended, had made a "sweetheart deal" with the attorneys for the plaintiff class.

The Chief General Counsel in the office of the Attorney General took the stand and testified why the defendants had negotiated the proposed consent decree. His testimony was persuasive, and answered Scharf's charges of inadequate representation and a "sweetheart deal." He and the Assistant Attorney General who argued for defendants took the position, with which this court agrees, that *Bell v. Wolfish* did not hold that double-celling is never unconstitutional; it held that it is not always unconstitutional. He further testified that under the facts of the present case, including the size of the cells and other relevant considerations, there was a very real chance that the state would lose on that issue. He referred to the transfer of many prisoners made necessary by the decisions in *Johnson v. Levine,* 450 F.Supp. 648 (D.Md., Harvey, J), modified and affirmed, 588 F.2d 1378 (4 Cir. 1978), and in *Nelson v. Collins,* 455 F.Supp. 727 (D.Md., Blair, J), modified and affirmed in the same Fourth Circuit opinion, and testified, inter alia, that additional correctional facilities under construction (although behind schedule) will be able to absorb a substantial number of additional prisoners. He stated his belief that the agreement reached by counsel for the parties to this case, embodied in the proposed

5. Scharf's motion stated:
   1. That he is an adult male citizen of the United States and of the State of Maryland AND A TAXPAYER and resident and domiciliary of the State of Maryland.
   2. That as motivant feels he has a special financial and civil interest in the outcome of this case in that the elimination of double celling could cause considerable expense to him as a taxpayer in the building of new facilities or the outright release of dangerous felons who have not served their term of punishment back into society to the detriment of motivant and others similarly situated. The motivant will be caused immediate and irreparable harm.
   3. That the other accommodations and remedies sought by plaintiff are rightfully under the jurisdiction of prison administrators appointed by a duly elected government and are not legally subject to second guessing by the Plaintiff or by a judicial official.
   4. That motivant is not being adequately represented by Attorney General Sachs or

Steven Caplis when they threw in the towel to all of Plaintiffs' demands in that they know and are actually aware of the decision of the Supreme Court of the United States in *Bell, et al. v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), which holds that double celling and certain other practices imposed by prison authorities are constitutionally legal and within the jurisdiction of these administrators. That this decision while it is extremely helpful to the Defendants' case is being totally ignored by them and has not been brought to the attention of the Court.
   5. Motivant meets the requirements for intervention of both Rule 24(a)(2) and Rule 24(b)(2) of the Federal Rules of Civil Procedure since motivant will sincerely defend against Plaintiffs' attack against double celling and other practices and motivants intervention will bring benefit to other citizens and taxpayers who have similar feelings and will not unduly delay or prejudice the adjudication of the original parties rights.

consent decree, would permit the state officials to make those transfers with the least practicable expense and danger to the public.

In *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501 (3 Cir. 1976), the court stated, at p. 505:

Initially, we note that, notwithstanding the liberalizing 1966 amendment of Rule 24(a), the burden of establishing inadequate representation—though the burden "should be treated as minimal"—remains on the proposed intervenor. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). Furthermore, a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1909, at 528–29 (1972); *see Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 689, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961) (dictum). All defendants here fit that mold. * * *

* * * Even if the injunction had been characterized as a consent decree, inadequate representation would not be established *ipso facto* ; any case, even the most vigorously defended, may culminate in a consent decree. As the Seventh Circuit has observed, a consent decree may be simply "the inescapable legal consequence of application of fundamental law to [the] facts. That [intervenors] would have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that the [defendants] did not adequately represent their interests in the litigation." *United States v. Board of School Commissioners*, 466 F.2d 573, 575 (7th Cir. 1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

■ In addition to the passage from Wright and Miller, cited by the Third Circuit, that text also states in the same section, at pp. 530–31: "The very rare cases in which a member of the public is allowed to intervene in an action in which the United States, or some other governmental agency, represents the public interest are cases in which a very strong showing of inadequate representation has been made." Scharf made no showing of inadequate representation of citizens and taxpayers by the Attorney General's office in this case. Accordingly, this court has ruled that Scharf is not entitled to intervene in this case under Rule 24(a) or (b), F.R.Civ.P.

■ It is not the duty or the function of the federal courts to run the state's penal system. That is the duty and function of the Governor and the persons he appoints to operate the Department of Corrections, using existing penal institutions and such additional institutions and programs as the Legislature may be willing to provide and finance. The function of the federal courts is to see that constitutional rights are not violated—whether they be rights of prisoners or of citizens and taxpayers.

■ This court has considered the question of double-celling and the other questions involved in this case. The court concludes that the consent decree is fair and reasonable and is in the best interests of all those who will be affected by it. That is the proper test. See 7A Wright and Miller, Federal Practice and Procedure, § 1797, particularly page 279 and cases cited in n. 38 in the bound volume and in the 1978 pocket part.

Accordingly, the court has approved, signed and caused to be entered the consent decree, which is attached hereto.

The court expresses its appreciation for the services rendered by Messrs. Bekman, Pierson and Adkins as court-appointed counsel for the plaintiff class, and has approved their modest request for fees and expenses.

## CONSENT DECREE

It is hereby agreed and stipulated by and between the Plaintiffs and the Defendants as follows:

1. That double celling of inmates at the Maryland Correctional Institute (MCI) at Hagerstown, Maryland, shall be eliminated

and overcrowding reduced in accordance with the following schedule and terms:

A. Double celling shall be eliminated by January 1, 1981.

B. The Defendants shall make every reasonable effort to (1) achieve a reduction of fifty (50) inmates per month beginning July 1, 1980, and (2) expedite the above timetable to reach a ceiling of 617 inmates and eliminate double celling before January 1, 1981.

C. The population of the cell tiers shall not exceed the number of inmates contained therein as of July 1, 1979.

D. After the reduction of the inmate population specified above, Defendants, their agents, servants and employees are permanently enjoined from housing any more than six hundred seventeen (617) inmates at the MCI.

E. That absent emergency situations, i. e., riot, disorder, etc., there shall be no double celling of inmates on segregation or in protective custody.

2. The Defendants shall provide within one hundred eighty (180) days of this Order a comprehensive medical plan providing inmates with medical benefits.

3. The Defendants shall provide within one hundred eighty (180) days of this Order a suitable dental plan which provides inmates with dental care and treatment.

4. The Defendants shall provide within sixty (60) days of this Order sufficient cardiac resuscitation equipment on site at the MCI, as well as trained personnel to administer said equipment.

5. Inmates at the MCI shall be provided reasonable and adequate exercise and recreation at all times. The gymnasium has been and shall continue to be used during the spring, fall and winter months, and Defendants agree that the gymnasium shall be used during the summer months when the weather precludes the use of the yard.

6. The Defendants shall comply with the State of Maryland, Department of Health and Mental Hygiene, inspection reports for food service facilities to insure that food, food protection, food equipment and utensils, water, plumbing and other operations are in compliance with State requirements.

7. That the parties agree and the Court finds that counsel fees in the amount of $6,500.00 and costs in the amount of $100.00 shall be paid to counsel for the plaintiffs for services rendered and costs incurred through November 8, 1979, and the Court, finding these amounts to be just and fair, incorporates them as part of this Consent Decree.

8. That although the file in these cases shall be closed, the Court maintains jurisdiction, and the defendants, through their attorneys, are directed to furnish additional reports to this Court and to counsel for the plaintiffs, covering the implementation of the terms of this Consent Decree, on the first days of each month beginning December 1, 1979 through and including January 1, 1981.