James Edward CARTER, et al.

v.

Gordon C. KAMKA, et al.

Civ. No. K–72–642.

United States District Court, D. Maryland.

Dec. 12, 1980.

Richard L. North, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Stephen H. Sachs, Atty. Gen. of Maryland, Stephen B. Caplis, Asst. Atty. Gen. of Maryland, Baltimore, Md., for defendants.

MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

(1) Prior to the date hereof, the within case and Civil Nos. K–71–37, K–72–60, K–72–295, K–72–417 and K–74–1 have been consolidated for all purposes. That consolidation, pursuant to Federal Civil Rule 42(a), is hereby noted.

(2) A proposed "Final Decree" was presented to this Court on April 16, 1980 by counsel for defendants. That "Final Decree" as updated by Court and counsel is attached hereto. As that document indicates, the sole issue remanded for determination by this Court is with respect to the constitutional obligation [of the State of Maryland] to provide assistance [to plaintiffs] in federal civil rights cases" in connection with the preparation of complaints to be filed by plaintiffs in those cases. *Carter v. Mandel*, 573 F.2d 172, 172 (4th Cir. 1978), *affirming this Court's opinion in all other respects in Hall v. Maryland*, 433 F.Supp. 756 (D.Md.1977). In so doing, the Fourth Circuit relied upon *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and in connection with the remand issue, the discussion by the Supreme Court in *Bounds* at 828 n.17, 97 S.Ct. at 1498 n.17.

(3) Since April 16, 1980, this Court has delayed the issuance of a Final Decree in this case so that it could learn how the Prisoner Assistance Project (PAP) and the services being performed by the Inmate Services Division (ISD) of the Maryland Public Defender's Office (MPD) were operating in practice. A number of the references in the proposed Final Decree submitted on April 16, 1980 referred to actions which were contemplated in the future. In the interim since April 16, 1980, the programs and projects referred to therein have become operational. On the basis of observance of those programs and projects, this Court is now able to make and does make the findings of facts set forth in the attachment hereto. As far as this Court can ascertain, inmates confined within the Maryland correctional system are able to obtain assistance from the ISD in connection with the preparation of complaints to be filed in federal habeas corpus cases pursuant to 28 U.S.C. § 2254 and from the PAP in connection with the preparation of complaints to be filed in federal civil rights cases pursuant to 42 U.S.C. § 1983. Insofar as the PAP is concerned, the said project could not function as it does today without the assistance of an able, dedicated group of attorneys working under the auspices of the Maryland State Bar Association in connection with the PAP of The Legal Aid Bureau, Incorporated, Baltimore, Maryland. In sum, the combination of the services provided by the ISD, PAP and the Maryland State Bar Association does enable inmates within the correctional system of the State of Maryland to obtain legal advice and assistance in connection with the preparation of complaints to be filed in this Court pursuant to 28 U.S.C. § 2254 and 42 U.S.C. § 1983. Additionally, this Court is satisfied that the Maryland correctional officials have taken appropriate steps, along with the ISD and the PAP, to make known to such inmates the availability of those legal services.

(4) The programs currently being supplied by the ISD and the PAP depend in large measure upon federal funding. If and when any of the federal funding required for the continuation of the provision of legal services by the ISD and the PAP either terminates or is not continued at a sufficient level to enable the same to continue to be offered, the State of Maryland will be required either solely, or jointly with the federal government, to fund the same to the extent required.

(5) In its per curiam opinion in *Carter v. Mandel, supra* at 173, the Fourth Circuit affirmed this Court's determination in *Hall v. Maryland, supra*, that "the legal assistance provided for all other types of litigation [that is, other than in connection with the preparation of complaints in federal habeas corpus and federal civil rights cases] was constitutionally sufficient." However, the Fourth Circuit ended its said per curiam opinion as follows:

Although litigation is not static and the future may require changes, the record

establishes that Maryland has commendably recognized its constitutional obligation to provide legal assistance for its prisoners.

As of this date, this Court is able to state, and does hereby state, that the State of Maryland is discharging its constitutional obligations to provide legal assistance to those prisoners for all types of litigation including, in accordance with the findings and conclusions set forth hereinabove in this Memorandum and Order, assistance required in connection with the preparation of federal habeas corpus and federal civil rights complaints to be filed in this Court. In that connection, the undersigned member of this Court is authorized to state that all of the other Judges of this Court except Judge Ramsey * have authorized him to make the statement set forth in the preceding sentence hereof on their as well as on his behalf.

(6) Plaintiffs continue to contend that inmates within the Maryland correctional system not only have the right to represent themselves in any and all litigation they desire to institute, including cases brought in this Court pursuant to 28 U.S.C. § 2254 and 42 U.S.C. § 1983, but also to have available to them adequate prison law libraries in connection with such litigation. Plaintiffs take the position that the provision of legal assistance is not an adequate substitute for law libraries because such legal assistance does not help the inmate who desires to proceed *pro se* in connection with both the preparation and the conduct of such litigation. In this Court's opinion, that argument is inconsistent with the holdings of, and the views expressed by, the Supreme Court of the United States, the United States Court of Appeals for the Fourth Circuit and this Court in *Bounds v. Smith, Carter v. Mandel* and *Hall v. Maryland. See United States v. Blue Thunder,* 604 F.2d 550, 556–57 (8th Cir. 1979); *United States v. Chatman,* 584 F.2d 1358, 1360 (4th Cir. 1978); *United States v. West,* 557 F.2d 151, 152–53 (8th Cir. 1977). *See also Ow-*

*ens-El v. Robinson,* 442 F.Supp. 1368, 1386–87 (W.D.Pa.1978), in which the District Court noted (at 1387) "that the fact that the prisoners were represented by counsel in criminal cases did not necessarily mean they had access to assistance of counsel for civil rights and habeas corpus actions" and held that "[t]he failure * * * to provide [legal] materials and facilities necessary for self-representation constitutes a violation of the Sixth and Fourteenth Amendments." In Maryland today, inmates do have "access to assistance of counsel for civil rights and habeas corpus actions" and accordingly do not have a right also to "access to legal materials and facilities." To the extent, if any, to which *Owens-El* suggests otherwise, this Court respectfully disagrees.

(7) Defendants are hereby required to continue to maintain and to provide the legal services to inmates within the Maryland correctional system which they were providing at the time this Court filed its prior opinion in this case (*see Hall v. Maryland, supra*) and which they have thereafter continued and/or commenced to provide as set forth hereinabove and in the attachment hereto. Additionally, it is hereby Ordered that defendants shall submit to this Court, no less frequently than every six months, reports setting forth their compliance with the provisions of the preceding sentence of this Memorandum and Order until relieved of such obligation by this Court.

(8) While the within case will be marked "closed," the court file in this case will remain available to receive any and all reports as so required. In addition, any one of the parties hereto may seek to reopen this case at any time for any appropriate reason.

(9) The Clerk is directed to mail copies of this Memorandum and Order to Messrs. Bekman, Caplis, Dorsey, North, O'Ferrall and Spofford. Mr. Caplis is asked to arrange for appropriate posting of this Memorandum and Order and of the attachment hereto at an appropriate place within each of the confinement institutions of the State of Maryland. It is so ORDERED.

---

* Judge Ramsey was a director of the Legal Aid Bureau, Baltimore, Maryland, during one or more times since the within case was instituted.

## FINAL DECREE

The parties having made various written submissions to this Court, and the Court having held a hearing on March 27, 1980, and a chambers conference on March 28, 1980, wherein certain agreed facts were presented by counsel for both parties, and this Court having noticed other facts, the Court will herein set forth its findings of fact, conclusions of law, and order for relief. The sole issue remaining to be decided in all of these cases is whether the State of Maryland provides adequate legal services for its inmate population [1] in regard to that population's ability to file and litigate "federal civil rights cases", *Carter v. Mandel*, 573 F.2d 172, 173 (4th Cir. 1978).

## I. FINDINGS OF FACT

### A. AGREED FACTS

At the proceeding of March 27, 1980, which was attended by counsel for plaintiffs, counsel for defendants, counsel who directs the Prisoner's Assistance Project (hereinafter "PAP"), discussed *infra*, and members of the Maryland Public Defender's Office (hereinafter "MPD") and its Inmate Services Division (hereinafter "ISD"), plaintiff's counsel, while carefully preserving plaintiffs' contention that the proposed legal services program was insufficient to meet the mandate of *Carter v. Mandel* and maintained that law libraries in each major Department of Corrections institution were required, did agree to the factual accuracy of representations made by defense counsel in earlier letters to this Court dated February 14, and February 27, 1980. These agreed facts, which were expanded and elaborated upon at the proceeding of March 27, 1980, and on the record in a chambers meeting attended by counsel for the parties, a member of the Public Defender's Office, and the Chairman of the Correctional Reform Committee of the Maryland State Bar Association, on March 28, 1980, are as follows:

1. The PAP is an LEEA-funded project for one year, beginning October 1, 1979, ending on September 30, 1980. Presently, the contracting authority (MPD) is preparing a renewal application to continue PAP, with a minimum request for the same personnel, and, if approved, reasonable expansion of PAP staff. Present PAP yearly funding level is $137,000.00. PAP's budget request for Fiscal Year 1982 will be in excess of $200,000.

PAP consists of a Chief Attorney (presently Timothy Spofford, Esquire) whose duties include administrative responsibilities as well as participation in PAP's substantive activities; three full-time staff attorneys; [2] two full-time legal assistants who function primarily as investigators/secretarial staff. As to the latter, there is no contention that PAP's secretarial staff is inadequate for the project.

PAP's responsibilities toward Division of Correction (hereinafter "DOC") inmates are confined to the receipt, review, investigation, and assistance in filing Federal Civil Rights claims when requested, cognizable under 42 U.S.C. § 1983, and habeas corpus claims under 28 U.S.C. § 2254, which are other than attacks on the validity of conviction (*e. g.*, restoration of "good time" cases would be handled by PAP). In certain cases of particular significance, PAP will continue to represent the inmate-plaintiff up to and including trial of the case, if appropriate. An adjunct to these activities may include general counselling of inmate problems which turn out to be other than 1983 claims, upon full investigation.

2. The equivalent of the time of one staff attorney (as estimated by Mr. Spofford) will soon be devoted to representation of inmates who choose to participate in

---

1. The class certified in these cases includes "all inmates who are confined, and who may be confined during the pendency of this action in the Maryland Division of Correction and at the Patuxent Institution." *See Hall v. State of Maryland*, 433 F.Supp. 756, 758, n. 1 (D.Md. 1977).

2. The time of one staff attorney is contractually committed by PAP to representation of inmates engaged in the Maryland Mediation Project, discussed *infra*.

"The Maryland Mediation Project" (MMP). Under the auspices of the National Institute of Corrections (NIC), the mechanics of MMP will be as follows: (1) after the filing of a civil rights claim in District Court, the inmate will be notified that he has the right to seek non-binding mediation, in which proceeding he will be represented by a PAP attorney; (2) the District Court proceedings will be stayed for a reasonable period of time necessary to complete this process; (3) the Maryland Office of the Attorney General, Correctional Litigation Section (AG–CL) has already agreed to mediate any case which the inmate desires mediated; (4) if mediation evolves into a settlement of the case, that settlement will be recorded in the Court case as a consent decree or other agreed disposition and the case dismissed; (5) if mediation fails to achieve agreement, the case will be activated and processed in the usual course by the District Court. MMP is scheduled to begin operation May 1, 1980. Its staff will include a mediator, a law clerk, and one secretary. Present NIC funding for MMP is extended to November 1, 1981.

3. The Correctional Reform Section of the Maryland State Bar Association is actively engaged in the formal establishment of a panel of attorneys (hereinafter "Bar Panel") who will be available to handle civil rights claims on referral, from PAP. Bar panel attorneys may be called upon to (1) investigate inmate claims, (2) assist in the preparation of 1983 claims for filing in court, (3) try some 1983 claims which require counsel, and (4) submit legal briefs or memoranda in those 1983 inmate cases where the District Court requires such assistance. PAP's primary concern at the present time is fulfilling its obligation to investigate and assist in preparation of meritorious cases, but not their presentation in court.

4. ISD has a staff of 8 full-time attorneys, 4 part-time attorneys, 2 investigators, 4 legal assistants, and anywhere from 3 to 7 volunteer workers at any one time. At the March 27th proceeding, Deputy Public Defender Alfred O'Ferrall, III, Esquire, expressed his confidence that the ISD staff would continue to expand, as events warranted. In fact, one full-time attorney had been added to ISD staff between the time of the Court's receipt of a letter describing that staff, from defense counsel dated February 27, 1980, and the March 28, 1980 proceeding.

ISD has been, and will continue, assisting DOC inmates in the preparation, and trial in some cases, of *habeas corpus* claims filed pursuant to 28 U.S.C. § 2254, which attack the validity of the inmate's conviction by State courts. To fulfill its duties, ISD has placed a full-time investigator at the Hagerstown, Maryland Correctional Institution (MCI–H), and will place another investigator at the Maryland House of Correction (MHC) in Jessup, Maryland, in the next several months, no later than July 1, 1980. PAP will have access to utilize these investigators on a reasonable, sharing basis with ISD.

5. DOC inmates presently number approximately 8000. The majority of claims filed in the United States District of Maryland emanate from three institutions: Hagerstown Complex, MCI–H and MCTC, MHC, and the Maryland Penitentiary Complex in Baltimore (MP) which includes the Reception, Diagnostic, and Classification Center (MRDCC) for new arrivals to the DOC. These institutions presently house approximately 3800 inmates.[3] Although the great majority of requests for assistance received by PAP emanate from these institutions, the project serves prisoners in all DOC institutions and those DOC inmates confined in Maryland's county jails.

---

**3.** All three institutions are presently under court order to reduce their population. MHC must house no more than 1294 inmates by June 1, 1980, *Johnson v. Levine*, 450 F.Supp. 648 (D.Md.1978), *rev'd. in part*, 588 F.2d 1378 (4th Cir. 1978). MP must house no more than 1003 inmates by June 1, 1980, *Nelson v. Collins*, 455 F.Supp. 727 (D.Md.1978), *rev'd. in part sub*

*nom. Johnson v. Levine*, 588 F.2d 1378 (4th Cir. 1978). By consent decree MCI–H must house no more than 617 inmates by January 1, 1981, *Washington v. Keller*, R–78–1730, 479 F.Supp. 569 (D.Md.1979). The State of Maryland has formally filed for an extension of time, to and including August 1, 1981, in the MHC and MP cases.

6. DOC inmates may file a grievance with the Inmate Grievance Commission (IGC).[4] In fact over 2,000 such grievances are filed with the Commission each year. In 1978, 68 IGC decisions were appealed to the State Circuit Courts. From October 1, 1979, through March 27, 1980, 20 such appeals were filed. Presently, counsel is not required for IGC hearings or Circuit Court appeals. PAP will represent inmates in only those IGC proceedings which in the opinion of its staff, present an appropriate alternative to federal litigation which otherwise would be undertaken, or which present a system-wide question of policy.

Counsel for defendants took the position that the *Carter* remand did not include IGC cases or appeals *per se* within its scope. However, counsel for defendants conceded that IGC appeals to State Courts, which appeals present a claim cognizable under 42 U.S.C. § 1983,[5] would, of logical necessity, be embraced in the *Carter* remand as quoted *supra.* The number of IGC appeals which state such a claim is not known. However, many of the IGC appeals are claims of alleged negligence on the part of state officials, and simple negligence claims are concededly not cognizable under 42 U.S.C. § 1983.

7. The DOC and AG–CL presented the following facts and undertakings for consideration. Division of Correction Regulation (DCR) 260–1[6] is currently, and will be, interpreted to include the affirmative duty of providing indigent inmates with reasonable amounts of writing materials, paper, and stamps, to permit adequate access to the federal and state courts with which the inmate seeks to communicate. Moreover, as 260–1 stipulates, inmates may render reasonable legal assistance to each other, consistent with the safety and welfare of the institution. Furthermore, 260–1c(1) requires the inmate's classification counselor to provide guidance in the inmate obtaining legal assistance.

In the latter connection, AG–CL has committed itself to a joint undertaking with PAP to have classification counselors at the three major DOC institutions assist in the factfinding process, in order to clarify the factual background of a particular inmate's complaint. This procedure will be implemented with both PAP and AG–CL being careful to preserve attorney-client relationships with inmates and correctional personnel, respectively. Finally the DOC is sponsoring an internal grievance mechanism, similar to one presently in existence at the Baltimore City Jail, to begin at the MP complex on or before June 1, 1980. This project will be expanded to include MHC and MCI–H in the next several months. Briefly, this procedure provides an impartial "in house" forum for the inmate who has any type of grievance with prison management.

8. At the present time, libraries sufficient to provide meaningful access to the courts to indigent inmates do not exist in any institution of the DOC. The DOC through counsel has stipulated to the Court that the legal materials that do exist (and any additional materials that may be obtained) in the institutions will continue to be made available to inmates in a reasonable fashion consistent with institutional order.

9. Counsel for plaintiffs has represented to the Court that many members of the plaintiff class have elected in the past and will elect in the future, to represent themselves in all types of litigation. The DOC proposes no special legal access programs for *pro se* litigants, who voluntarily elect to handle their own cases.

## B. OTHER FACTS

Plaintiff's counsel was not requested to agree to the following facts, which this Court derives from its own personal knowledge and experience, as well as the knowl-

---

4. *See Hall v. State of Maryland, supra,* 433 F.Supp. at 768–769.

5. Concededly, federal courts do not have exclusive original jurisdiction of claims brought pur-

suant to 42 U.S.C. § 1983. *See* 28 U.S.C. § 1343.

6. Reprinted fully in *Hall,* 433 F.Supp. at 762.

edge and experience of the entire bench of the United States District Court for the District of Maryland.

1. It has been the consistent experience of this Court and the other members of the bench for this District that the Maryland State Bar Association and individual members thereof, have readily and willingly accepted court appointments in 1983 claims, and have prosecuted those claims with thoroughness and competency which meet the highest standards of the legal profession. Moreover, the Correctional Reform Section of the State Bar, under the recent auspices of Nevett Steele, Jr., Esquire, and present leadership of Paul Bekman, Esquire has taken an even greater role in the active establishment of a "Bar Panel" to work with PAP as discussed *supra.*

2. It has further been the experience of this Court and the members of this bench that the Office of the Attorney General on the whole, and particularly its Correctional Litigation Section formed in March of 1979, has been uniformly cooperative with appointed counsel in such matters as production of records, witness location and identification, discovery matters generally, and time-saving trial procedures, in the litigation of 1983 claims of DOC inmates.

## II. CONCLUSIONS OF LAW

1. *Carter v. Lally,* 573 F.2d 172 (1978) remanded the present case to reconsider only one aspect of this Court's prior ruling in *Hall, supra* ; that aspect was Maryland's obligation to ensure DOC inmates' access to the courts in "federal civil rights cases", 573 F.2d at 173.

■ 2. The teaching of *Carter* and of *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), confirming the earlier opinion of this Court rendered in this case, is that the State of Maryland has the alternative of providing such access to the courts by means of "adequate law libraries or adequate assistance from persons trained in the law", 430 U.S. at 828, 97 S.Ct. at 1498. Although primarily concerned with "protecting the ability of an inmate to prepare a petition or complaint" 430 U.S. at

828, n. 17, 97 S.Ct. at 1498, n. 17, quoting *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974), the Court observed at the same footnote North Carolina statutes made no provision for appointment of counsel in federal habeas corpus or civil rights actions.

3. In *Bounds* the Supreme Court took a decidedly flexible approach to the form which a legal services program might take:

> Among the alternatives are the training of inmates as paralegal assistants to work under Lawyers supervision, the use of para-professionals and law students, either as volunteers or in formal clinical programs, the organization of volunteer attorneys through bar associations or other groups, the hiring of lawyers on a part-time consultant basis, and, the use of full-time staff attorneys, working either in new prison legal assistance organizations or as part of public defender or legal services programs. 430 U.S. at 831, 97 S.Ct. at 1499–1500.

and

> ... a legal access program need not include any particular element we have discussed, and we encourage local experimentation. Any plan, however, must be evaluated as a whole to ascertain its compliance with constitutional standards. 430 U.S. at 832, 97 S.Ct. at 1500.

*See also Williams v. Leeke,* 584 F.2d 1336, 1339 (4th Cir. 1978), wherein the Fourth Circuit held that a state system which "makes lawyers regularly available to prisoners for consultation and advice", meets the *Bounds* requirement.

■ 4. It is the firm belief of this Court and the Court so holds, that the Legal Assistance Program "taken as a whole" put forward by the defendants in this case meets the "adequacy" requirement, not only in "the preparation and filing of meaningful legal papers", as required by *Bounds,* but in the entire gamut of representing DOC inmates in civil rights cases, and habeas corpus cases as well.

Addressing the latter type cases first, the ISD staff is presently well able to service

DOC inmates in the presentation, and prosecution in some cases, of 28 U.S.C. § 2254 claims which question the validity of a State conviction. In fact, no contention to the contrary has been pressed by the plaintiffs in this case. The only question plaintiffs had was the existence of ISD's commitment to perform such work (P.I., letter of Richard North to this Court, dated February 4, 1980); that commitment having been made (Paragraph 1 of letter from Stephen B. Caplis, Esquire, to this Court dated February 14, 1980), and reaffirmed by Melvin Paul, head of ISD, and Alfred O'Ferrall, Esquire, Deputy Public Defender, in open court on March 27, 1980, this Court has not the slightest doubt that ISD will ably perform this job. It is correct that PAP has no responsibility for the handling of 2254 claims which attack the State conviction. However, with ISD assisting the preparation of all such claims from the outset, no doubt PAP will expend less time investigating or receiving inmate claims which are 2254 in nature. Thus, the very existence of ISD must assist PAP in the performance of its 1983 duties, consistent with the *Carter* remand.

Turning to 1983 claims, this Court finds that PAP, together with the Bar Panel, and with the continued cooperation of DOC officials, particularly inmate classification counselors, and cooperation of the Attorney General's Office, particularly AG–CL will provide adequate, competent assistance to those inmates of the DOC desirous of filing such claims. At the outset, this Court states that, in its contacts with PAP since the Fall of 1979, it has been impressed with the quality of the work performed; under Mr. Spofford's leadership, the Court has no reservations in this regard.

The full-time investigator from PAP, together with the assistance of ISD investigators, classification counselors, and private attorneys solicited from the "Bar Panel" should be able to investigate inmate complaints on a reasonably detailed basis, and help the particular inmate formulate his complaint in concise, intelligible language for the edification of the Court and named defendants. With the bulk of inmate requests coming from the three major, long-term DOC institutions, the Court is confident that the combined efforts of all concerned will grow more efficient and better coordinated with time, so as to dispel the concerns surrounding the volume of complaints to PAP.

Of course, this Court is well aware that the performance of the legal services program must be tested in the months to come, and supported by empirical data. For that reason, the Court will include in its final order, both reporting requirements, and provision for reopening of the case, should future events warrant. However, this Court reiterates its opinion that, with the cooperation of all parties concerned, the PAP will fulfill its objective of providing adequate legal assistance to inmate litigants of 1983 claims, in accordance with the highest standards of the legal profession. The fact that a few IGC appeals in State courts may require PAP or Bar Panel assistance, as 1983 claims, besides the federal court claims sought to be brought, does not alter this conclusion; actually those claims having gone through the IGC process, and the issues having been refined by that administrative body, the probability is that less work by PAP, if any, would be required in those cases.[7] This Court concludes that PAP as now constituted, with the adjunct services of ISD, "Bar Panel", and DOC cooperation, will more than adequately assist DOC inmates prepare federal civil rights claims.

As convinced as this Court is that the proposed legal services program will adequately address the needs of DOC inmates in preparation of 1983 claims, the Court is even more certain that adequate assistance in the litigation of 1983 claims will be provided. Preliminarily, the Court observes

---

**7.** Nor does the inclusion of "loss of good time" *habeas corpus* claims in PAP's workload, materially impact on the Court's holding. The applicable legal principles to such cases are es-

sentially the same as in 1983 cases, so that PAP's expertise easily lends itself to assistance in such cases, which are normally 1983 cases without a prayer for monetary damages.

that PAP with such assistance as may be necessary from the Bar Panel will represent all inmates who desire to utilize mediation, described *supra*, at 1 A.2. Any successful mediation will effectively settle a claim which would otherwise necessitate proceedings, perhaps including trial, before the court.

This Court observes that the vast majority of inmate 1983 claims are disposed of without need or resort to appointment of counsel for plaintiff. In the minority of cases wherein appointment of counsel is deemed necessary, the District Court of Maryland has had no problem in obtaining services of competent counsel through the Maryland State Bar Association or the Bar of this Court. Assuming that PAP will be counsel of record on a number of 1983 claims even before the District Court determines representation to be necessary,[8] the number of appointments which the District Court may have to make should be small. This Court repeats that the quality of representation of inmates by appointed counsel in the past has been consistently first-rate. Thus, the conclusion is inescapable that the requirement of *Bounds*, will be satisfied at the litigation stage of the proceeding, for purposes of trial, legal briefs, and/or legal research and argument before the District Court.

Plaintiffs have contended that voluntary *pro se* litigants have a right to library materials for the prosecution of their own cases. Plaintiffs base their contention on 28 U.S.C. § 1654 which provides the right to parties to "plead and conduct their own cases personally" and *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) and *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) which provide a constitutional right to litigate *pro se* in certain instances.

While the Court notes that the rights of *pro se* litigants were not expressly addressed by the Supreme Court in *Bounds v. Smith*, it finds plaintiffs' contention with-

out merit. To find that *pro se* litigants have an additional right to the provision of law libraries flies directly in the face of the Supreme Court's ruling that the states be allowed flexibility in developing programs to provide meaningful legal access in terms of law libraries *or* assistance from persons trained in the law. 430 U.S. at 828, 97 S.Ct. at 1498. *See Williams v. Leeke, supra.*

### ORDER

In view of the aforegoing findings of fact and conclusions of law, it is this ___ day of _____, 1980, by the United States District Court for the District of Maryland, ORDERED

1. That defendants encourage, cooperate with, maintain, and provide all reasonable support for the legal services program including the Prisoner's Assistance Project of the Legal Aid Bureau, Inmate Services Division of the Public Defender's Office, and the Bar Panel of Attorneys established by the Correctional Reform Section of the Maryland State Bar Association.

2. That defendants take all reasonable steps to ensure the continuous existence of adequate legal services for the inmates of the Division of Correction in regard to the preparation, filing, and litigation of federal civil rights claims.

3. That the defendants submit a report to this Court, six months from the date of this Order, but in no event more than seven months from the date of this Order, detailing the staff, caseload, status of cases, budget, and any other data deemed relevant, of the Prisoner Assistance Project. The report is to include the nature and extent of utilization of the adjunct services to be provided by the Inmate Services Division of the Public Defender's Office, and the panel attorneys from the Maryland State Bar Association, or any other services developed by PAP during the period from this Order to the date of the report.

---

8. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975), requiring appointment of counsel in 1983 claims only in "exceptional cases." It

follows that neither PAP nor the Bar Panel will be required to represent DOC inmates in all 1983 cases.

4. That defendants pay plaintiffs' counsel the sum of Seven Thousand Five Hundred ($7,500.00) Dollars for counsel fee, which sum this Court finds fair and reasonable considering the nature of the relief obtained, the quality of counsel provided, and all other relevant factors.

5. That either party may reopen this case for any sufficient cause, at any time. Particularly, but not exclusively, plaintiffs are free to request a reopening of this case, should the legal services program be deemed inadequate, from plaintiffs' view, in the delivery of legal assistance for the preparation and/or litigation of federal civil rights claims.