Robert DALVIN, # 252–653, Plaintiff,

v.

Earl BESHEARS, Warden, Defendant.

Civil Action No. AMD 96–2883.

United States District Court,
D. Maryland.

Nov. 1, 1996.

Robert Dalvin, Pro Se.

No appearance for defendant

## MEMORANDUM

DAVIS, District Judge.

On September 23, 1996, I dismissed this case instituted by a Maryland prison inmate as "frivolous" pursuant to 28 U.S.C. § 1915(e), and directed the Clerk of Court to enter a computerized docketing designation (or "flag") noting that this was plaintiff's first "frivolous" dismissal under the recently-enacted Prisoner Litigation Reform Act ("PLRA").[1] Plaintiff has filed a motion for reconsideration, indicating that he understands the rationale behind the *sua sponte* dismissal, but arguing that the dismissal should not count as his "first strike" under the PLRA. For the reasons set forth herein, I am persuaded that plaintiff has presented a compelling basis for modifying the dismissal order. Accordingly, I shall direct the Clerk to remove the "strike."

Plaintiff points to a convergence of problems that led to his reluctant filing of this action, which was undertaken in order to obtain legal information with which to litigate

---

1. The PLRA was appended to the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1996. Section 804(d) of the Act amended 28 U.S.C. § 1915 to include subsection (g):

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

As this Court interprets this provision of the Act, once three such dismissals under § 1915(e) or Rule 12(b)(6) of the Federal Rules of Civil Procedure have been accumulated, a prisoner will be barred from initiating further civil actions *in forma pauperis*, absent extraordinary circumstances.

an already-pending (and possibly meritorious) claim. While on punitive segregation in August 1996, plaintiff requested from the prison librarian a copy of this Court's *In Re: Prisoner Litigation* Standing Order, Misc. 92–27, which provides for special service-of-process procedures in cases involving frequently-joined categories of defendants in prisoner actions filed in this Court. Apparently, plaintiff had seen a reference to this Standing Order in connection with a pending action, and wanted to understand its ramifications. The librarian did not respond to plaintiff's request, but instead sent him copies of various federal civil rights and habeas corpus forms. Plaintiff then complained to the Warden, from whom he received no response.

These events occurred during the time when the Legal Aid Bureau, Inc.'s Prisoner Assistance Project ("PAP") was being dismantled.[2] Plaintiff indicates that whatever information may have been posted on his institution's bulletin boards on how to contact the new legal services provider never made its way to prisoners like himself, i.e., those housed in punitive segregation. Given this convergence of events, it is easy to see why a prisoner given short shrift by prison personnel would next turn to the federal court to seek to obtain information he deemed necessary to ensure his meaningful access to the courts. The difficulty here, of course, is that plaintiff should not have filed a civil complaint; he should have written a letter. In any event, under these circumstances, the effect of assigning a "strike" to Davlin is, manifestly, unduly harsh and inappropriately punitive. Accordingly, the "strike" against plaintiff in connection with his filing this case shall be removed.

In coming to this conclusion, I stress that rescission of a "strike" very likely will remain an unusual event in this Court; however, where as here a prisoner's civil action, though legally misguided, was undertaken in evident good faith solely to remove a perceived barrier to access to the courts, remedial action is both warranted and just.[3]

---

2. Effective August 1, 1996, federal restrictions mandated that legal services organizations receiving federal funds cease assisting prisoners. To provide the services required under *Carter v. Kamka*, 515 F.Supp. 825 (D.Md.1980), Maryland entered into a two-year contract with the Prisoner Rights Information System of Maryland, Inc. ("PRISM"). Although PAP wrote to prisoner-clients concerning the change in representation, I have no doubt that considerable confusion existed within the prisons as to which organization to contact for legal advice.

3. I do not believe that this action constitutes an improper "amendment" of the statute. Admittedly, the statute is silent as to any exception to its blanket rule; nonetheless, there is no reason to think that, even under the statute, an inmate may not seek relief under Fed.R.Civ.P. 60(b)(6) ("any other reason justifying relief from the operation of the judgment"), and plaintiff here has made a sufficient showing for such relief. *Nat'l Credit Union Adm. Bd. v. Gray*, 1 F.3d 262, 266 (4th Cir.1993) ("Rule 60(b)'s catch-all phrase—any other reason justifying relief—has been described as a 'grand reservoir of equitable power to do justice in a particular case.' 7 Moore's Federal Practice ¶ 60.27[1] at 60–266 (1993). Although '[t]he remedy provided by the Rule ... is only to be invoked upon a showing of exceptional circumstances ...,' *Compton v. Alton Steamship Co.*, 608 F.2d [96 (4th Cir.1979)] at 102, we believe this case cries out for the exercise of that 'equitable power to do justice.' ").